```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

TERRY BYARS,                    }
                                }
     Plaintiff,                 }
                                }       CIVIL ACTION NO.
v.                              }       2:14-CV-1338-WMA
                                }
UAB HOSPITAL MANAGEMENT, LLC,   }
                                }
                                }
     Defendant.                 }
```

**MEMORANDUM OPINION**

On August 6, 2015 defendant UAB Hospital Management, LLC ("UAB") filed a motion for summary judgment challenging the sole remaining claim brought by plaintiff Terry Byars.  Her surviving claim alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964. (Doc. 25; Doc. 26).  Byars filed her response to UAB's motion on August 28, 2015 (Doc. 29) and UAB filed a reply on September 11, 2015 (Doc. 30).  The motion is now under submission.

For the reasons stated below, defendant's motion for summary judgment will be granted.

"[C]onsidering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party . . . [s]ummary judgment is appropriate where the evidence shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005) (quoting Fed. R.

Civ. Proc. 56(c)) (citation omitted). "For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Id*. at 1326 (citations omitted).

### I.   Prima facie case

"When a plaintiff lacks direct evidence of discrimination, courts use the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to analyze circumstantial evidence of discrimination." *Wellons v. Miami Dade Cnty.*, 611 F. App'x 535, 538 (11th Cir. 2015) (citing *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). "To make out a prima facie case of racial discrimination a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) **her employer treated similarly situated employees outside her class more favorably**." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (emphasis added).

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (citation omitted). "The most important factors in the

disciplinary context are the nature of the offenses committed and the nature of the punishments imposed . . [and courts] require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citations omitted).

It is undisputed (1) that Byars is white (Doc. 27-1 at), (2) that she was reasonably qualified for her research nurse position (Doc. 27-1 at 10-12), and (3) that she was terminated for alleged violations of UAB's HIPAA policy (Doc. 27-1 at 18).  While Byars identifies two African-American employees, Cheryl Womack and Shelia Watkins (Doc. 27-1 at 20), who were not terminated for violations of UAB's HIPAA policy (Doc. 29 at 4), Byars fails to establish her similarity to these two other employees to the degree necessary to make out a *prima facie* case of discrimination.

First, Byars was supervised by Dr. Vetter (Doc. 27-1 at 13) whereas Womack and Watkins worked under a different supervisor (Doc. 27-1 at 21-22). "Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989).  Additionally, the quantity and quality of Byars' alleged violations of UAB's HIPAA policy are distinct and dissimilar.  Womack was disciplined for

3

accessing her own personal medical records to review her appointment dates and medication list. (Doc. 27-1 at 79). Watkins was disciplined for accessing a former patient's medical records to attempt to exonerate herself from improperly leaving a tourniquet on that patient. (Doc. 27-1 at 81).  While both were disciplined, neither Womack or Watkins were terminated for their respective violations of UAB's HIPAA policy. (Doc. 27-1 at 79-82).  Unlike Womack and Watkins, Byars was terminated for **multiple** alleged violations of UAB's HIPAA policy.  First, Byars admits that she accessed her own personal medical records contrary to UAB policy. (Doc. 27-1 at 36).  Second, Byars admits that she accessed her daughter's medical records without written authorization contrary to UAB policy. (Doc. 27-1 at 36-38). Third, Byars admits to accessing the health records of a coworker without authorization contrary to UAB policy. (Doc. 27-1 at 37-39).  Compared to the single incidents by Womack and Watkins, these three instances by Byars are dissimilar and cut against establishing discriminatory intent by UAB. *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir. 1984)) ("if an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown").

Additionally, in the course of Byars' work on a "Spine

4

Psychology study" she allegedly accessed the **entire** electronic health records, "IMPACT PowerNotes," for two patients without the required eligibility screening checklist forms as required by the institutional review board's approved protocol in compliance with UAB's HIPAA policy. (Doc. 26-7-9 and Doc. 27-3 at 4-6).  By allegedly accessing the entire record, Byars accessed the "name, date of birth, medical record number ("MRN"), health status, medications, allergies, history, problems, vitals, plans and dates" for these two patients (Doc. 27-5 at 3-4), which allegedly was more patient health information than was necessary for the pre-screening and confirmation of eligibility for the spine study. (Doc. 27-3 at 5-6 and Doc. 27-5 at 3-4).  While Byars asserts that accessing these complete records for research purposes was well within hospital policy (Doc. 29 at 2), she admits these alleged violations played a part in UAB's decision to terminate her (Doc. 29 at 4).  Therefore, taken together, Byars multiple violations of UAB's HIPAA policy are qualitatively and quantitatively dissimilar from those of Womack and Watkins. See *McCann v. Tillman*, 526 F.3d 1370, 1373-74 (11th Cir. 2008) (brackets omitted)("the misconduct for which the plaintiff was discharged must be nearly identical to that engaged in by an employee outside the protected class whom the employer retained").

    Byars fails to present a prima facie case for racial discrimination by failing to adequately identify similarly

situated employees who were treated more favorably.  She offers no direct evidence of racial animus towards whites.

**II.  Pretext**

Assuming only for the sake of argument that Byars could make out a prima facie case of racial discrimination, she cannot show that UAB's articulated reasons for termination were pretextual. "When a plaintiff has established a prima facie case of discrimination, the burden of production then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action." *Winborn v. Supreme Beverage Co. Inc.*, 572 F. App'x 672, 674-75 (11th Cir. 2014) (citing *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002)). "If the defendant is able to do so, the burden shifts back to the plaintiff to show that this reason is really a pretext for unlawful discrimination." *Id* at 675.

"The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). "Where an employee argues that he did not actually engage in misconduct . . . an employer may rebut this allegation by showing its good faith, honest belief that the employee violated a rule." *Stone & Webster Const., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1136 (11th Cir. 2012). "If an employer terminates an employee 'because it honestly believed that the employee had

violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race.'" *Winborn v. Supreme Beverage Co. Inc.*, 572 F. App'x 672, 674 (11th Cir. 2014) (quoting *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987)).

Despite Byars' assertion in her response brief that the evidence shows she did not violate UAB's HIPAA policy (Doc. 29 at 6), there is no support in the record for her assertion. In her brief, Byars points to a letter from the Alabama Board of Nursing, which states that it "determined that [Byar's] conduct as described in the complaint does not constitute a provable violation of the *Nurse Practice Act*." (Doc. 29-1). Yet the probative value of the exhibit is diminished by the fact that neither the attached letter or Byars' brief itself makes any argument or explanation as to how the *Nurse Practice Act* is remotely analogous to the privacy standards in UAB's HIPAA policy. See *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (quotation omitted) ("an inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation").[1]

Even though Byars asserts that she did not violate UAB's

---

[1] Additionally, in her brief Byars states that "[t]he evidence shows that the Plaintiff did not violate UAB's HIPAA policy" and cites to "Plaintiff's Ex. B", however no attachment marked "Exhibit B" is attached. (Doc. 29).

7

HIPAA policy (Doc. 27-1 at and Doc. 29 at 2, 6), her own EEOC complaint states "I was terminated from my job for a HIPAA violation; which I admitted" (Doc. 27-1 at 75). Further, Byars maintains this is not an admission to a HIPAA violation, she admits she accessed her personal health records and the records of her daughter and a co-worker without authorization, which she admits is contrary to UAB's HIPAA policy (Doc. 271- at 35-38). Therefore, Byars fails to establish that UAB's stated reason for violations of its HIPAA policy was pretextual. See *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) ("the district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence").

Even if Byars were correct that she did not technically violate the letter or spirit of UAB's HIPAA policy, she acknowledges that UAB believed she had violated its HIPAA policy. (Doc. 29 at 4) ("Defendant admitted to terminating Plaintiff for HIPAA violations"). Byars does not dispute Dr. Vetter's statement that "[e]ven if Ms. Byars had not accessed her personal medical record, her daughter's medical record, and the medical record of a co-worker, I would have still recommended termination fo her employment for the IRB protocol deviations and HIPAA violations." (Doc. 27-3 at 6). Nor does Byars contest the

findings of Dale Parks, a security and privacy coordinator for UAB who conducted an investigation and audit of the alleged HIPAA violations, which concluded that she violated UAB's HIPAA policy and created "a high risk of harm" to those whose information she improperly accessed. (Doc. 27-5 at 4-5). Therefore, summary judgment is appropriate because Byars fails to show pretext where, even if mistaken, UAB honestly believed Byars had violated its HIPAA policy and terminated Byars for that reason.

## CONCLUSION

For the reasons stated above, this court by separate order will grant defendant's motion for summary judgment.

DONE this 25th day of September, 2015.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE